IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NORMAN SINGLETON AND )
CHERAYNE WILLIAMS, a minor through )
her parent and natural guardian, SHERRIE )
WATTS, )
)
Plaintiffs, )
)
v. ) C.A. No. 17-343 (MN)
)
PATROLMAN ROBERT CUNNINGHAM, )
POLICE OFFICER JACOB RANKIN, )
CORPORAL ROBERT BARRETT, CHIEF )
PAUL M. BERNAT, ROBIN R. )
CHRISTIANSEN, MAYOR, CITY OF )
DOVER and THE CITY OF DOVER, )
DELAWARE, )
)
Defendants. )

## MEMORANDUM OPINION

David A. Denham, Joseph M. Jachetti, Schuster Jachetti LLP, Wilmington, DE; Brian J. Zeiger, Levin & Zeiger, Philadelphia, PA – attorneys for plaintiffs

Daniel A. Griffith, Whiteford Taylor & Preston LLC, Wilmington, DE – attorney for defendants

October 17, 2018
Wilmington, Delaware

*signature*

NOREIKA, U.S. DISTRICT JUDGE:

Plaintiffs, Norman Singleton ("Singleton") and Cherayne Williams ("Williams"), a minor,[1] (collectively "Plaintiffs") filed this action pursuant to 42 U.S.C. § 1983, asserting use of excessive force (Counts I and II), illegal seizure (Count III), and municipal liability (Count IV) in violation of their fourth and fourteenth amendment rights. They also raise supplemental state law claims. (Counts V-VII). Pending before the court is a motion for summary judgment (D.I. 23) filed by defendants, Patrolman Robert Cunningham, Police Officer Jacob Rankin, Corporal Robert Barrett, Chief Paul M. Bernat, Robin R. Christiansen, Mayor, City of Dover, and the City of Dover, Delaware (collectively "Defendants") with respect to all claims asserted in Plaintiffs' complaint (the "Complaint"). (D.I. 1). For the reasons discussed below, the Court will grant-in-part and deny-in-part Defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiffs' claims arise from interactions with police officers on July 6, 2016. Many facts are undisputed, but where disputes are alleged, they are noted below.

On July 7, 2016, Plaintiffs were traveling from their home in Smyrna, Delaware to Dover, Delaware.[2] At the time, Singleton was on probation from a former drug conviction. (D.I. 25, Exh. A at 3). Williams, who was a minor at the time,[3] is Singleton's step-daughter. (D.I. 1 at 2; D.I. 24 at 1).

---

[1] In the Complaint (D.I. 1), Williams was identified as C.W. In the subsequent papers that were publicly filed, all parties identified her by name.

[2] Singleton asserts that he was traveling to Dover to reestablish mental health treatment at Kent General. (D.I. 27 at 1-2). Defendants assert he was traveling to Dover to sell crack cocaine. (D.I. 24 at 1, 3).

[3] There is some confusion as to whether Williams was twelve or thirteen or fourteen on July 7, 2016, but there is no dispute that she was a minor on that date.

The officers had received a tip about Singleton coming to Dover for a drug transaction. (D.I. 25, Exh. A at 3). Consistent with that tip, Officer Stagg, a probation officer who was monitoring Singleton's location, noticed that Singleton was travelling toward Dover. (*Id.*). Corporal Barrett and Officer Rankin positioned themselves along the route to Dover and initiated a stop of Singleton's car in the parking lot of the Dover Inn located on North DuPont Highway. (D.I. 25, Exh A at 3; D.I. 25, Exh. B at 19-20). After he was pulled over, Singleton was instructed to step out of the car and to talk to Officer Staggs. (D.I. 27, Exh. A at 32-33, 40, 43-44). At that point, he threw up his hands and ran across DuPont Highway towards a gas station.[4] (D.I. 45-46). Before he reached the highway, Corporal Barrett attempted to fire his TASER at Singleton, but one of the probes missed. (D.I. 25, Exh. A at 4). After Singleton reached the gas station, Patrolman Cunningham fired his TASER at Singleton.[5] (*Id.*). Singleton fell face forward to the ground and sustained serious injuries, including a fracture to his jaw, lacerations on his face, and road rash. (D.I 25, Exh. D at 4). He asserts that he currently walks with a slight limp in his gait and reports mild cognitive impairment. (D.I. 27 at 5; D.I 27, Exh. A at 57-58).

After he was subdued, police searched Singleton and found two bags of cocaine in his pockets. (D.I. 25, Exh. A at 4). Police also searched the car and found three cellphones but no drugs.[6] (*Id.*). Singleton admits he was in possession of cocaine, but denies he was *en route* to sell

---

[4] Singleton asserts that he was "scared he was about to be assaulted" and thus ran towards a gas station hoping there would be video surveillance. (D.I. 27 at 4). While Singleton's state of mind is not relevant to the issues currently before the Court, for purposes of the present motion, the Court accepts that assertion.

[5] Corporal Barrett and Patrolman Cunningham testified that while running across the street, Singleton was "reaching into his pockets." (D.I 27, Exh. B at 47; D.I 24 at 7). Singleton denies that. (D.I. 27 at 4).

[6] In their brief, Defendants assert that "9.4 grams of crack cocaine [were] found along with Ms. Williams in the vehicle." (D.I. 24 at 8; also D.I. 24 at 16; D.I. 28 at 7). There is no

it. Plaintiff was not convicted of any narcotics related offenses based on the July 7, 2016 incident. (D.I. 27 at 5).

Williams apparently had remained in the vehicle when Singleton attempted to flee. After Singleton was apprehended, Officer Rankin testified that Williams was "taken into custody as part of [the] overall investigation." (D.I. 24 at 8). She was handcuffed, transported to the police station, and detained there until it was determined that "she was a juvenile and more than likely didn't have anything to do with" the investigation involving Singleton. At that point the handcuffs were removed. (D.I. 24 at 19, 6-17; D.I. 27 at 7; D.I. 28 at 7-8).

The Domestic Incident Report written by Corporal Barrett offers a different take, suggesting that officers knew while still at the Dover Inn that Williams was a minor who was not involved in the criminal activity. Corporal Barrett wrote that Officer Rankin "had taken [Williams out] of the vehicle into custody without incident." (D.I. 25, Exh. A at 4). After several attempts, Corporal Barrett ultimately contacted Williams' mother, Sherrie Watts, and "inform[ed] her to come to the Dover Inn to get her daughter." (*Id.*). Twenty minutes later, Ms. Watts called Corporal Barrett and said that she was just then on her way to the Dover Inn. (*Id.*). At that point, Corporal Barrett told Ms. Watts to go to the police station instead and "instructed Rank[in] to transport [] Williams to the police department." (*Id.*). Williams was ultimately released to the custody of her mother and not charged with any crimes.

## II. LEGAL STANDARDS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

---

evidence of that, and the Domestic Incident Report states the contrary – that there were no drugs found in the car. (D.I. 25, Exh. A at 4).

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable factual inferences must be made in a light most favorable to the nonmoving party. *Id.* at 255; *Patrick v. Moorman,* 536 F. App'x 255, 257 (3d Cir. 2013) (citing *Kopec v. Tate,* 361 F.3d 772, 775 (3d Cir. 2004)); *Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 535 (3d Cir. 2007)). The nonmoving party, however, bears the burden to establish the existence of each element of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson,* 477 U.S. at 248; *Jones v. United Parcel Serv.,* 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v. Goode,* 886 F.2d 1391, 1395 (3d Cir. 1989).

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"In order to recover under § 1983, a plaintiff must show that the defendant, under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Renda v. King,* 347 F.3d 550, 557 (3d Cir. 2003) (citing 42 U.S.C. § 1983); *Berg v. Cnty. of Allegheny,* 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 is not a source of substantive rights . . . the plaintiff must allege a violation of a federal right.").

4

Government officials performing discretionary functions are shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is the defendants' burden to establish they are entitled to qualified immunity. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir. 2001).

A two-step analysis is used to evaluate whether a police officer is protected by qualified immunity. First, the court must determine whether the alleged facts, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *In re City of Phila. Litig.*, 49 F.3d 945, 961 (3d Cir. 1995). The qualified immunity analysis comes to an end, and the officer is entitled to immunity, "[i]f no constitutional right would have been violated were the allegations established." *Saucier*, 533 U.S. at 201-02; *see also Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001). If a "violation could be made out on a favorable view of the parties' submissions, [however,] the next, sequential step is to ask whether the right was clearly established," *i.e.*, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201; *see also Kornegay v. Cottingham*, 120 F.3d 392, 395-96 (3d Cir. 1997). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## III. DISCUSSION

### A. Count I against Corporal Barrett and Count II against Patrolman Cunningham – § 1983 Action Based on Excessive Force in Violation of the Fourth and Fourteenth Amendments.

Singleton alleges he was the victim of excessive force during his arrest on July 7, 2016 – first when Corporal Barrett fired his TASER and later when Patrolman Cunningham fired his. Defendants contend that any force used was not excessive and was objectively reasonable under the circumstances.

Under § 1983, the use of excessive force to effect an arrest violates a suspect's Fourth Amendment rights. *Graham v. Connor,* 490 U.S. 386, 395–96 (1989). However, "[n]ot every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[7] *Graham,* 490 U.S. at 396-97; *Patrick,* 536 Fed. App'x at 258 (citing *Kopec,* 361 F.3d at 776–77). "Reasonableness" thus looks to whether the officers' actions are "objectively reasonable" considering the facts and circumstances confronting them, without regard to their underlying intent and motivation. *Graham,* 490 U.S. at 397. A determination regarding reasonableness must allow for the practical reality that officers are frequently called upon to make split-second decisions, under tense, quickly changing circumstances. *Abraham v. Raso,* 183 F.3d 279, 289 (3d. Cir. 1999). It is not always realistic to expect "detached reflection" by an officer before acting in a given situation. *Id.* (quoting *Brown v. United States,* 256 U.S. 335, 343 (1921)).

---

[7] A police officer's intentions and motivations – good or bad – are irrelevant. *Graham,* 490 U.S. at 397.

The totality of the circumstances inquiry set forth in *Graham* identified specific factors for courts to consider in evaluating the reasonableness of an officer's actions, including (1) "the severity of the crime," (2) the "immediate threat" posed by the suspect to officers or others, and (3) whether the suspect was "actively resisting arrest" or "evad[ing] arrest by flight". *Graham*, 490 U.S. at 396. The Third Circuit has expanded this list to include (1) whether the suspect is "violent or dangerous," (2) the "duration" of the force, (3) whether the force was used to make an arrest, (4) the "possibility" that the suspect is armed, and (5) the number of people with whom the police must contend. *Patrick*, 536 Fed. App'x at 258 (quoting *Sharrar* 128 F.3d at 822); *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (also quoting *Sharrar*, 128 F.3d at 822).

Accepting Singleton's version of events on each issue as to which there is a genuine dispute of material fact, and drawing all reasonable inferences in his favor, the record demonstrates that:

- Police Officers had received a tip that Singleton, while on probation for prior drug offenses, was travelling to Dover to sell drugs.

- After being stopped on the way to Dover, Singleton fled from police officers.

- Singleton's flight from the police officers was across a highway.

- When stopped, Singleton had two bags of cocaine, totaling 9.4 grams, in his possession.

- Corporal Barrett fired his TASER at Singleton. One probe hit Singleton in the center of his back before Singleton made it to the highway, but the other missed and Singleton continued running.

- After Singleton made it across the highway and while he was still running, Patrolman Cunningham fired his TASER, hitting Singleton in the back causing him to fall onto the pavement, and sustain serious injuries.[8]

- The Internal Affairs Bureau of the Dover Police Department determined that the officers' use of force upon Singleton was reasonable, necessary and

---

[8] At some point after the July 7, 2016 incident, the City of Dover apparently changed its TASER policy to state that officers should not fire TASERs at suspects running away.

consistent with the Department's policies and procedures. (D.I. 27, Exh. D).

The Third Circuit has upheld the use of taser guns to subdue fleeing suspects. *See, Patrick,* 536 Fed. App'x at 259 (finding reasonable as a matter of law an officer's use of his taser to subdue a bank robber who was fleeing and attempting to resist arrest); *see also Gruver v. Borough of Carlisle,* No. 4: CV 05-1206, 2006 WL 1410816, at *4–5 (M.D. Pa May 19, 2006) (use of a taser on a suspect who was believed to be intoxicated and behaving in an unruly manner was reasonable). Here, too, the *Graham* factors point to reasonableness of officers' actions in tasing Singleton as he attempted to evade arrest.

The first *Graham* factor considers the severity of the crime at issue. Singleton was placed under arrest for possession of crack cocaine with intent to distribute, resisting arrest, endangering the welfare of a child, possession of drug paraphernalia, and violation of probation. (D.I. 25, Exh. D at 3). Possession with intent to distribute is a serious charge, but Singleton was not convicted on this or apparently on any other drug charge. Most of the remaining charges were based on interactions with Defendants during the incident at issue.

The second *Graham* factor considers whether the suspect poses an immediate threat to the safety of the officers or others. Here, as discussed above, after he was stopped by police, Singleton ran from the officers towards (and eventually across) a multi-lane highway,[9] posing a danger to himself, to the officers chasing him, and to potential drivers on the highway. Singleton asserts that there were no cars on the highway when he approached. (D.I. 27, Exh. A at 49). The Court accepts that as true for this motion, but that does not mitigate the potential danger. The highway was not, for example, closed. It was an open and working highway on which one or many cars could appear without notice.

---

[9] Singleton testified that it is eight total lanes with six for travel. (D.I. 27, Exh. A at 49).

The third *Graham* factor considers whether the suspect is actively resisting arrest or attempting to flee. It is undisputed that Plaintiff was attempting to flee from the officers.

So too, the additional factors analyzed in the Third Circuit point to reasonableness of the officers' actions. While it is not asserted that Singleton, himself, was "violent or dangerous," his actions in running across a highway posed a danger to himself and an unknown number of others. The duration of the force was relatively minimal. After fleeing, Singleton was chased and TASERs were fired at him twice – the first time (which did not work) to stop him from running across the highway and the second time to stop him from fleeing and to facilitate his arrest. With respect to the "possibility" that Singleton was armed, Defendants assert that Singleton reached into the waistband of his pants while fleeing, suggesting he may be armed. Singleton disputes this. For the purposes of this motion, the Court accepts Singleton's version of events and that there was no evidence that he was armed. Finally, as to the number of people with whom the police must contend, Singleton was the lone suspect being chased, but the police officers had to deal with at least the possibility of additional people in cars on the highway and members of the public at the gas station.

Viewing the totality of the circumstances, in the light most favorable to Plaintiff, the Court concludes that the use of force by Corporal Barrett and Patrolman Cunningham was reasonable. It thus did not violate the Constitutional rights asserted in Counts I and II.[10] Under these circumstances, Corporal Barrett and Patrolman Cunningham are entitled to qualified immunity from liability insofar as their conduct does not violate "clearly established statutory or

---

[10] In Counts I and II, Plaintiffs assert claims of excessive force pursuant to the Fourth and Fourteenth Amendments. (D.I. 1). "[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process." *Abraham*, 183 F.3d at 288 (citing *Graham*, 490 U.S. at 393–94).

constitutional rights" of which every reasonable official would have known. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Consequently, summary judgment shall be entered in favor of Corporal Barrett on Count I and Patrolman Cunningham on Count II of Singleton's § 1983 claims for excessive force.

### B. Count III Against Officer Rankin – § 1983 Action Based on Illegal Seizure in Violation of the Fourth and Fourteenth Amendments.

As with Counts I and II, Defendants assert that qualified immunity applies to Count III, which asserts that Officer Rankin arrested Williams without probable cause. There is no dispute that after Singleton was apprehended, Williams was handcuffed, transported to the police station, and detained until it was determined that "she was a juvenile and more than likely didn't have anything to do with" the investigation involving Singleton. And, at that point, the handcuffs were removed. (D.I. 24 at 16-17; D.I. 27 at 7; D.I. 28 at 7-8). In their reply brief, Defendants do not dispute that the detention of Williams constituted an arrest, requiring probable cause. (D.I. 28 at 7-8).

A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States v. Watson*, 423 U.S. 411, 424 (1976); *see Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender").

Here, Williams was a passenger in a vehicle, whose operator had fled from police officers and had possessed 9.4 grams of cocaine. The question is whether the officer had probable cause to believe that Williams committed a crime. In support of their assertion that she did, defendants cite *Maryland v. Pringle*, 540 U.S. 366, 372 (2003). In *Pringle*, three men were riding in a vehicle

in the early morning hours with $763 in rolled-up cash in the glove compartment and five plastic glassine baggies of cocaine behind the back-seat armrest. The United States Supreme Court held:

> [w]e think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe [one of the suspects] committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 372.

That case, however, is distinguishable from the facts here. According to the Domestic Incident Report, the drugs were "located in the right and front shorts pockets that Singleton was wearing." (D.I. 25, Exh. A at 4). The drugs were not in the car with Williams. The Domestic Incident Report indicates that after Williams was removed from the car, Corporal Barrett searched the car and found three cell phones, but no drugs. (*Id.*).[11]

Other questions about probable cause also exist. Officer Rankin testified that Williams was handcuffed upon exiting the car and then taken to the police station where it was determined that she was a juvenile and the handcuffs were removed. (D.I. 27 at 7). In the Domestic Incident Report, however, Corporal Barrett noted that he had contacted Williams' mother while still at the Dover Inn and "inform[ed] her to come to the Dover Inn to get her daughter." (*Id.*). He then reported that twenty minutes later, the mother called back and said she had had to get a ride and was now on the way to the Dover Inn. (*Id.*). At that point, Corporal Barrett told her to go to the Dover Police Department instead of the Dover Inn. (*Id.*). This raises the question of whether it was known that Williams was a minor who was not involved in the criminal activity of Singleton before she was taken (in handcuffs) to the police station.

---

[11] There is no evidence that at the time of the car stop, Williams was a suspect, and Defendants do not assert that she was. Williams had not, for example, been identified by the confidential informant as being in the possession of or dealing drugs.

11

While the Court recognizes that the detention of Williams was likely brief, it cannot conclude that there are no genuine issues of material fact as to whether she was arrested without a reasonable belief that probable cause existed to do so. Thus, the next question relevant to qualified immunity is whether the probable cause standard was clearly established at the time of William's arrest. It seems obvious both that: (1) the probable cause standard for arrest was well-established at the time of Williams' arrest and (2) a reasonable police officer would have been well-aware of the standard at that time. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975); *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

Indeed, here, Defendants do not argue that the probable cause standard was not clearly established at the time of Williams' arrest or that Officer Rankin was unaware of it. Instead, they simply argue that there was probable cause to "believe Williams committed the crime of possession of cocaine" because she "was a passenger in a vehicle proceeding to a drug transaction, containing 9.4 grams of crack cocaine, whose operator had just fled from the police officers." (D.I. 28 at 7-8). In so arguing, Defendants' ignore or contradict other established facts, such as that Williams was not a suspect identified in the original drug transaction, that there were no drugs found in the car with Williams, and that Corporal Barrett had apparently already identified Williams as a minor while at the Dover Inn, before she was transported in handcuffs to the police station.[12] (D.I. 25, Exh. A at 4).

---

[12] Continuing to hold an individual in handcuffs once it has been determined that there was no lawful basis for the initial seizure is unlawful within the meaning of the Fourth Amendment. *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) (citing *United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir. 1996)).

Because genuine issues of material fact exist as to whether Williams' arrest was the subject of probable cause, and thus violated a clearly established right of which every reasonable officer would have known, Corporal Barrett is not entitled to qualified immunity with respect to Williams' § 1983 illegal seizure claim (Court III) as a matter of law.

### C. Count IV Against Chief Bernat, Mayor Christiansen, and the City of Dover – Municipal Liability – § 1983 Action Based on Violation of the Fourth and Fourteenth Amendment.

A municipality may only be held liable under §1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Phila*, 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decision-maker possessing final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell v. Dep't of Soc. Servs of the City of N.Y.*, 436 U.S. 658 (1978). A plaintiff seeking to recover from a municipality must: "(1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of the federal rights." *Holmes v. City of Wilmington*, 79 F. Supp. 3d 497 (D. Del. 2015).

Here, Plaintiffs assert that the unconstitutional "policy or custom" is the City of Dover's use of a probation officer as a "*de facto*" police officer. Plaintiffs offer no evidence, however, to demonstrate that this "policy or custom" is unconstitutional to any degree, in that it is "not authorized by law." *See, e.g., Wood v. William*, 568 Fed. App'x 100, 103 (3d Cir. 2014); *Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 430 (D. Del. 2013). The argument is that the City of Dover has probation officers who (1) have a desk at the police station, (2) carry a gun and a badge, and (3) are partnered with police officers and ride in a police cruiser on "police jobs" (D.I. 27 at

19), and that this results in violations of individuals Fourth Amendment rights. No evidence has been offered, however, of any custom or policy, let alone the unconstitutionality of such a custom or policy either with respect to Singleton's arrest or as to the public at large. Under the circumstances, Plaintiffs' municipal liability claim under §1983 (Count IV) fails as a matter of law and consequently, summary judgment shall be entered in favor of Chief Bernat, Mayor Christiansen, and the City of Dover.

### D. Counts V against Corporal Barrett and Count VI against Patrolman Cunningham – State Law Battery.

Under Delaware law, the tort of battery is the "intentional, unpermitted contact upon the person of another which is harmful or offensive." *Brzoska v. Olson,* 668 A.2d 1355, 1360 (Del. 1995). The contact must offend the person's integrity, regardless of whether the contact is harmful. *Id.* The contact by Defendants Corporal Barrett and Patrolman Cunningham that Singleton complains of was related to the firing of TASERs in connection with his arrest on July 7, 2016. As previously discussed, the officers used reasonable force to subdue Singleton after he fled from officers across a highway. As the force used was objectively reasonable, the complained of contact was reasonable and not offensive. Therefore, judgment shall be entered in favor of Corporal Barrett on Count V and Patrolman Cunningham on VI of Singleton's state law battery claims.

### E. Count VII against Officer Rankin – State Law False Arrest / False Imprisonment.

Under Delaware law, "[f]alse imprisonment or false arrest is generally defined as the deprivation of the liberty of another without his consent and without legal justification. *Hunt ex rel. DeSombre v. State, Dep't of Safety & Homeland Sec., Div. of Delaware State Police,* 69 A.3d 360, 369 (Del. 2013). "Legal justification is held to be the equivalent of legal authority and judged by the principles applicable to the law of arrest." *Id.*

For the reasons discussed in connection with Count III regarding Williams' § 1983 claim for illegal seizure, the Court concludes that genuine issues of material fact preclude summary judgment on Count VII.

## IV. <u>CONCLUSION</u>

For the forgoing reasons, Defendants' Motion for Summary Judgment (D.I. 23) is granted-in-part and denied-in-part. An appropriate order will follow.